IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| DERRICK S. JONES | * | CIVIL ACTION NO. 10-0012 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| OUACHITA PARISH 4th JUDICIAL DISTRICT ET AL | * | MAGISTRATE JUDGE KAREN L. HAYES |

<u>REPORT AND RECOMMENDATION</u>

Before the court is a petition for writ of *habeas corpus*, 28 U.S.C. § 2254 filed on December 14, 2009 by petitioner Derrick S. Jones ("Jones"). Doc. # 2. Jones is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Ouachita Parish Correctional Center in Monroe, Louisiana. This matter has been referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the reasons set forth below, it is recommended that the petition be **DENIED**.

BACKGROUND[1]

On September 21, 2005, Jones was found guilty as charged of four counts of second degree kidnapping following a jury trial in the Fourth Judicial District Court of Louisiana. One of the people that Jones kidnaped was Kewanita Brownfield, a woman Jones had previously dated as well as the mother of his child.

On February 6, 2006, the trial court held a hearing on Jones' motion for a new trial. R. at V. 2, p. 396. At the hearing, Jones contended that he was denied his right to a fair trial on the

---

[1] Much of this background summary is borrowed from the undersigned's July 21, 2010 Order, Doc. # 15.

basis that a juror at his trial, Ms. Phyllis Benton,[2] did not admit during *voir dire* that she had been

the victim of domestic violence.  Jones' counsel, Attorney Lee Perkins, then called Ms. Benton to

testify.  The following exchange then took place:

> Mr. Perkins:   Do you remember the court asked you some questions about whether anybody had been the victim of domestic violence?
>
> Ms. Benton:    Yes.
>
> Mr. Perkins:   And did you respond to those questions?
>
> Ms. Benton:    From my knowledge I did.
>
> Mr. Perkins:   And did you advise the court that you had been the domestic violence abuse?
>
> Ms. Benton:    If I responded, that means I advised him.
>
> The Court:     What was your answer, ma'am?
>
> Ms. Benton:    I said yes.  And [Mr. Perkins] came back and asked me the same thing.
>
> Mr. Perkins:   I asked you also do you remember me asking you any questions with regard to persons who have been the victim of domestic violence?
>
> Ms. Benton:    Yes.  You asked several questions.
>
> Mr. Perkins:   And did you respond to those questions?
>
> Ms. Benton:    I'm pretty sure.  I just respond to all of them because we had to respond to them.  My answer was the same from the beginning.  Yes.
>
> Mr. Perkins:   So you in fact had been the victim of domestic violence on more than one occasion?
>
> Ms. Benton:    Twice I do believe.
>
> Mr. Perkins:   And that was before this trial occurred?
>
> Ms. Benton:    Years ago.  Yes.

*Id.* at 402-03.  The court summarily denied Jones' motion for a new trial.  *Id.* at 404.

Jones was subsequently adjudicated a third felony offender and on February 22, 2006, he

was sentenced to serve a total of 45 years at hard labor.  R. at V. 3, 458.

Petitioner appealed.  His court-appointed appellate counsel filed an *Anders* brief and

motion and in due course, counsel was allowed to withdraw having found no non-frivolous

---

[2] Throughout the trial and subsequent pleadings, the juror in question has been referred to as both "Ms. Phyllis Calloway," "Ms. Phyllis Benton, and "Ms. Phyllis Benton/Calloway."  At the evidentiary hearing held on October 19, 2010, the juror indicated that she now goes by "Phyllis Benton;" as such, she will be referred to as "Ms. Benton" herein.

issues for an appeal.[3]  On February 28, 2007, the Louisiana Second Circuit Court of Appeals affirmed Jones' conviction and sentence after having determined that the evidence was sufficient to support the conviction and that the sentences imposed were not excessive.  *State of Louisiana v. Jones*, 41-672-KA, 954 So.2d 187 (La. App. 2 Cir. 2/28/2007).

On some unspecified date Jones submitted a *pro se* application for *certiorari* to the Louisiana Supreme Court.  Jones apparently argued that the trial court erred when it denied his motion for new trial.  On April 25, 2008, the Supreme Court granted writs, vacated the judgment, and remanded for further proceedings.  *State of Louisiana v. Jones*, 2007-KO-0790, 979 So.2d 1272 (La. 4/25/2008).  The court specifically ordered the Second Circuit to determine whether any discrepancies existed between Ms. Benton's testimony at the hearing on Jones' motion for new trial, and Ms. Benton's testimony during *voir dire*:

> In the event the transcript reveals significant discrepancies in her responses during *voir dire* and those she gave at the hearing on defendant's motion for a new trial with respect to whether she had been the victim of domestic abuse and disclosed the information in the course of jury selection, the court of appeal shall appoint counsel for defendant and order the case rebriefed.  See La.C.Cr.P. art. 851(4) (providing grounds for a new trial when "[t]he defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before trial."); cf. La.C.Cr.P. art. 775 (providing grounds for a mistrial when "[f]alse statements of a juror on *voir dire* prevent a fair trial.").

R., V. 3 at 749.

On remand, the Louisiana Second Circuit Court of Appeals reviewed the *voir dire* testimony of Ms. Benton.  *State of Louisiana v. Jones*, 41,672-KA, 999 So. 2d 1152 (La. App. 2

---

[3] *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967): When appointed appellate counsel has determined that no non-frivolous issues and no ruling arguable supporting an appeal were found after a conscientious review of the record, he may file a brief establishing those facts and requesting permission of the court to withdraw from the case.

Cir. 9/17/2008).  It took note of the following exchange between Mr. Perkins and the members of

Ms. Benton's jury panel:

| Mr. Perkins: | Is anybody in the jury box been the victim of a crime before?  Themselves personally? |
| **A Juror:** | **Domestic**. |
| Mr. Perkins: | Have you ever been a victim of a crime, Mr. Moore? |
| Moore: | Yes, sir. |
| Mr. Perkins: | I'm not going to even ask you about that.  No, let me ask you.  What kind of crime were you the victim of? |
| Moore: | I've had somebody break in my truck before.  One or two things stolen. |
| Mr. Perkins: | Sir? |
| A Juror: | I've had my vehicle broken into. |

R at V. 3, p. 674-75 (emphasis added).

After comparing the preceding *voir dire* excerpt with Ms. Benton's testimony during the

hearing on Jones' motion for a new trial, the Second Circuit observed that the *voir dire* excerpt

did not indicate whether Ms. Benton was the juror who testified that he or she had been the

victim of domestic violence.  *Jones*, 999 So. 2d at 1155.  The Second Circuit stated that "there

are significant discrepancies in [Ms. Benton's] testimony during *voir dire* and at the motion for

new trial regarding whether she has been a victim of domestic abuse."  *Id.*  Accordingly, the

Second Circuit remanded the matter to the district court and appointed counsel for Jones.  *Id.*

In due course, the parties rebriefed the case and petitioner, through his court-appointed

counsel, argued two assignments of error: (1) the trial court erred when it failed to grant his

motion for a new trial on the basis that Ms. Benton's failure to answer *voir dire* questions

truthfully regarding whether she had been a victim of domestic violence denied him his right to a

fair trial as guaranteed by the Sixth Amendment to the United States Constitution and Art. I, § 16

of the Louisiana Constitution; and, (2) the trial court erred in denying his challenge for cause

with regard to potential jurors Karen Fletcher and Sylvia Baxter.

On January 14, 2009, the Second Circuit determined that these assignments were without merit and affirmed Jones' convictions. *State of Louisiana v. Jones*, 41,672-KA, 999 So.2d 1156 (La. App. 2 Cir. 1/14/2009). With regard to the first Assignment of Error, the court did not address whether Ms. Benton was or was not an impartial juror. Instead, the court relied on two other bases to affirm the trial court's denial of Jones' motion for a new trial.

The first basis upon which the Second Circuit relied to affirm the trial court's denial of Jones' motion for a new trial turned on LA. CODE CRIM. PROC. ANN. art. 782, which provides, "[c]ases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict." After observing that Jones was found guilty by a unanimous jury, the court stated that Jones "was not prejudiced by [Ms. Benton's] statements or representations during *voir dire* because, even if she was unqualified to serve on the jury, her vote was not required to convict the defendant." *State of Louisiana v. Jones*, 999 So. 2d at 1160. Accordingly, the court indicated that in criminal cases that do not require a unanimous verdict for a conviction, a defendant can prove that he was prejudiced by a biased juror only if the statutory minimum number of jurors voted to convict.

The second basis upon which the Second Circuit relied to affirm the trial court's denial of Jones' motion for a new trial turned on LA. CODE CRIM. PROC. ANN. art. 851(4), which provides that a court shall grant a new trial when "[t]he defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment . . . ." Accordingly, the court observed that, under Louisiana law, to merit a new trial on the basis of juror bias, the defendant must prove that he was not aware of the juror's status

5

when he accepted him or her, and that he could not have discovered this information by the exercise of due diligence. *State of Louisiana v. Jones*, 999 So. 2d at 1160. The court concluded that Jones could not make this showing because Mr. Perkins, during *voir dire*, did not ask individual members of the second of two jury panels, which included Ms. Benton, questions about their experience with domestic violence, even though he did ask individual members of the first jury panel such questions. *Id.* In finding that Mr. Perkins failed to exercise due diligence while interviewing the prospective jurors in the second jury panel, the Second Circuit impliedly found that the "juror" who responded to his question regarding whether any of the prospective jurors had been victims of crime by saying "domestic" was indeed Ms. Benton, and that, as a result, his failure to ask her any follow-up questions was negligent. *Id.*

In a pleading dated February 10, 2009, petitioner's court-appointed appellate attorney applied for writs of *certiorari* and review in the Louisiana Supreme Court. *See* Doc. # 2-1, pp. 2-25. On November 6, 2009, the Supreme Court denied writs without comment. *State of Louisiana v. Derrick S. Jones*, 2009-0311 (La. 11/9/2009), 21 So.2d 297.

In the instant petition, filed December 14, 2009, petitioner raises claims identical to those raised by court-appointed counsel on direct review. *See* Doc. # 2-1, pp. 2-25. Therefore, petitioner's arguments are as follows:

> (1) The Second Circuit Court of Appeal erred in upholding the trial court's denial of [petitioner]'s Motion for a New Trial. Petitioner was denied a fair trial as guaranteed to him by both U.S. Constitution Amend. VI and La. Constitution Art. I, § 16.
>
> (2) The Second Circuit Court of Appeal erred in upholding the trial court's denial of the challenges for cause raised by defense counsel as to potential jurors Karen Fletcher and Sylvia Baxter.

*Id.*

6

After review of the Second Circuit's January 14, 2009 opinion, the undersigned determined that the two bases upon which the court affirmed petitioner's motion for a new trial may be subject to challenge under 28 U.S.C. § 2254.  *See* Order, Jul. 21, 2010, Doc. # 15. Accordingly, the undersigned ordered that an evidentiary hearing be set in order to determine whether Ms. Benton was indeed the juror who admitted being the victim of a "domestic" crime in response to Mr. Perkins' question regarding whether any of the prospective jurors had been victims of crime.  *Id.*

## PLEADINGS, EVIDENCE AND TESTIMONY

### I.    Petitioner's Pre-Hearing Filings and Allegations

As stated *supra*, petitioner's *habeas* motion is identical to the writ of *certiorari* and review filed by his court-appointed appellate attorney in the Louisiana Supreme Court, on February 10, 2009.  *See* Doc. # 2-1, pp. 2-25.  In his pre-hearing brief, petitioner argued that Ms. Benton:

> (1) failed to honestly answer a material question or questions during *voir dire* [as to] whether she had been a victim of a crime; and
>
> (2) failed to respond honestly to a material question when two other potential jurors responded to a question about whether they or someone close to them had been kidnaped.

Doc. # 21, pp. 3-4.

Additionally, petitioner contended that Ms. Benton was not the unidentified female who stated that she had been the victim of domestic violence.  *Id.* at p. 4.  Petitioner further argued that, at the hearing, he would illustrate that Ms. Benton had been the victim of three separate instances of domestic violence prior to her service on petitioner's jury, and "at least one of" those instances "involved an attempt to remove her from her car when she was attempting to leave a

7

location, which may have constituted attempted kidnaping under Louisiana law." *Id.*

Petitioner contended that Ms. Benton's alleged failure to honestly answer the material question or questions during *voir dire* prevented Mr. Perkins from striking Ms. Benton from the jury, either for cause or peremptorily. *Id.* at p. 5. As such, petitioner concludes, he is entitled to a new trial. *Id.*; *United States v. Scott*, 854 F.2d 697, 698 (5th Cir. 1998).

Petitioner's initial *habeas* filing, as well as the pre- and post-hearing briefs prepared by counsel, illustrate that the primary basis for his motion is the presence of Ms. Benton on the jury, allegedly in violation of petitioner's Sixth Amendment rights. However, a thorough review of the transcript, post-hearing pleadings, and documents submitted by petitioner reveal that Ms. Benton's presence on the jury was only part of an alleged wide-ranging conspiracy against petitioner. Participants in the conspiracy include the kidnaping victim, Kewanita Brownfield, whom petitioner alleges worked in the law offices of Charles Jones, the former Louisiana State Senator and brother of the Honorable Benjamin Jones, the judge who presided over petitioner's trial. EHT, 42:1-10; 18-22. Petitioner further alleges that Kewanita Brownfield's stepfather, a Mr. Ebbie Getret, worked as an investigator for Charles Jones, and that her mother, Evelyn Brownfield-Smith, worked at "Service Master," which, petitioner alleges, is in the same office building that housed Mr. Charles Jones' law practice. *Id.* Ms. Brownfield-Smith, petitioner continues, is also "good friends with...Judge Benjamin Jones and D.A. Stephen Sylvester. T. Br., Ex. "A", Jones' Affidavit [Doc. # 25-1, p. 32]. Finally, petitioner alleges that his trial lawyer, Mr. Perkins, also worked in the same office building that housed Mr. Charles Jones' law practice; petitioner argues that this is further evidence that everyone at the trial level conspired together to deny petitioner a fair trial for some unstated motive. *Id.* In sum, petitioner apparently

argues that, because Mr. Charles Jones and Judge Jones are brothers, and persons involved in the trial - including petitioner's lawyer - allegedly worked in the vicinity of Mr. Charles Jones' law office, petitioner was denied a fair and impartial trial.  *Id.*[4]

Assistant District Attorney Stephen Sylvester filed a pre-hearing statement on behalf of the State of Louisiana.  Doc. # 20.  In the brief, the State reiterated its arguments made in its answer, filed on April 23, 2010.  Doc. # 14. The State also contended that, during the original trial, the defendant and his counsel, Mr. Perkins, failed to exercise reasonable diligence by not further interrogating Ms. Benton when she responded "domestic" to Mr. Perkins' questioning. Doc. # 20, p. 9.  The State concluded that, as failure to interrogate a juror does not constitute an exercise of due diligence to discover whether the juror is qualified to serve, petitioner cannot now challenge the qualification of Ms. Benton.  *State v. Brown*, 557 So.2d 1085 (La. App. 2d Cir. 1990).

---

[4] Indeed, petitioner himself stated as much during the evidentiary hearing.  When Mr. Sylvester inquired as to whether Jones recalled the unanimous guilty verdict:

| | |
|---|---|
| Petitioner: | I know it come back guilty when you got the lady's victim, her mother, her step-father, your attorney working for judge brother and the judge admitting that they work with them and you got them on the stand.  Then you're using these other jurors, which, you know, how you going to have a fair trial?  I asked him I wanted to testify and he never called me on the stand. |
| Mr. Sylvester: | So it didn't matter about Ms. Benton?  Everything was already stacked against you in the first place? |
| Mr. Harville: | Objection, Your Honor. |
| The Court: | I'll let him answer it. |
| Petitioner: | Ma'am? |
| The Court: | You can answer the question. |
| Petitioner: | Say that question again. |
| **Mr. Sylvester:** | **I say, it didn't matter about Ms. Benton; everything was stacked against you anyway?** |
| **Petitioner:** | **Yes, sir.**  Because it's on record, which Mr. Lee Perkins and I already know, Quinton Holmes had told me that he's going to do everything in his willpower to see that I get life even if have to pay people to lie on me. |

EHT at 55:17-56:10 (emphasis added).

## II.     Petitioner's Hearing Testimony

On October 19, 2010, the evidentiary hearing was held at the federal courthouse in Monroe, Louisiana.  *See* Evidentiary Hearing Transcript ("EHT"), Doc. # 23.  During his testimony, petitioner testified that he recalled Mr. Perkins asking the question, "Is there anyone here who's a victim of a crime?"  EHT at 41:10-15.  Petitioner further recalled another, unnamed juror responding, "Domestic," but stated that "Ms. Benton didn't" respond whatsoever.  *Id.* at 41:13-21.  In addition to his other claims of unfairness at his trial, described *supra*, petitioner testified that fellow inmate Anthony Winnfield told petitioner that Ms. Benton's husband's name was "Tommie," and that the two of them were "going through [a] domestic dispute at the time [of the trial]."  *Id.* at 44:17-24.  Petitioner also testified that he attempted to ask Ms. Benton a question on his own, but was told by Judge Jones that "that's for your lawyer."  *Id.* at 46:18-22.  Petitioner wanted to ask Ms. Benton about her "lying about being in a dispute about Tommie."  *Id.* at 46:25-47:2.

Petitioner also testified that he noticed Ms. Benton sleeping during the trial, and that he brought this to the attention of Mr. Perkins, who did not act on this information.  *Id.* at 47:12-18.  Petitioner further testified that Ms. Benton was constantly "mugging" petitioner, "frowning up" at him during the trial.  *Id.* at 47:19-25.  Contrary to Ms. Benton's claim that she advised the court of her past instances of domestic disputes, petitioner did not recall her making any statements on the subject.  *Id.* at 48:12-19.  Additionally, petitioner testified that he did not ever see Ms. Benton raise her hand in response to a question about being a past victim of domestic violence.  *Id.* at 48:20-21.

During examination by Mr. Sylvester, petitioner testified that he knew "for a fact" that

10

various transcripts had been "falsified."  *Id.* at 54:11-17.  Although petitioner's testimony is at times difficult to follow, he appears to contend that Mr. Sylvester, or perhaps someone on Mr. Sylvester's behalf at the Ouachita Parish Correctional Center, confiscated petitioner's mail so that petitioner would not be prepared during his appeals, and at the instant hearing.  *Id.*[5]

## III.     Hearing Testimony and Evidence From Other Witnesses

During his own testimony, Mr. Perkins testified that he learned of Ms. Benton's "domestic matter" sometime between the guilty verdict, and before the motion for a new trial was filed.  EHT at 4:25-5:14.  Mr. Perkins further testified that, when filing his motion, he attached various incident reports concerning involving Ms. Benton.  *Id*. at 6:7-13.  During the hearing on the motion for a new trial, held on February 6, 2006, Mr. Perkins was "limited" in his questioning of Ms. Benton due to a sustained objection made by Mr. Sylvester.  *Id.* at 9:3-10.

---

[5] On cross-examination, the following exchange occurred between Mr. Sylvester and petitioner:

A.     However, Mr. Sylvester.  Which in the transcripts, the other ones in the kidnaping case some of them have been falsified which I know for a fact, remember.  It's been switched places with your signature stating you admitted it in your hand writing that you say that you got to get the copies and change.  So if them been falsified, you could have falsified these, which I got restraining orders concerning Mr. Benton over the --

\*\*\*

Q.     Restraining orders?
A.     Yes, sir.
Q.     For whom or for what?
A.     For Tommie Benton for Ms. Phyllis Benton.
Q.     Okay.  You said something a minute ago, I thought you said something a minute ago about --
A.     Yes, it was about the transcript --
Q.     -- what I --
A.     -- yes, that your handwriting was on this transcript which you said you had to get them, which however when they were sent back to Ouachita Parish Prison, and I got it from city from officers the stuff being confiscated, illegal mail.  However, you entered with some of my paperwork that I know I didn't give you and the transcripts have been changed up in there.
Q.     Did that have anything to do with you being guilty?
A.     I'm not guilty.
Q.     Do you recall the verdict?
A.     Yes.  It came back guilty.

EHT at 54:11-55:15.

11

According to Mr. Perkins, had he been able to continue with his questioning of Ms. Benton, he would have referenced each of the previous domestic instances she was involved in.  *Id.* at 9:16-23.  Finally, Mr. Perkins testified that he recalled asking the jury panel if "anyone [had] been the victim of a crime," and that a juror answered "domestic."  *Id.* at 10:14-17.  At the evidentiary hearing, Mr. Perkins did not recall which potential juror made that comment; he stated that it "could have been Ms. Benton," but he did not recall.  *Id.* at 18-23.

Concerning Ms. Benton's previous domestic incidents, Mr. Perkins testified that, if he had the incident reports reflecting that Ms. Benton had been forcibly removed from a car, he "would have probably struck her from the panel."  EHT at 14:25-15:11.  But because Ms. Benton did not mention this incident to Mr. Perkins during *voir dire*, he did not have the opportunity to question her on past instances of domestic violence; therefore, he did not learn that she had ever been involved in an incident where someone attempted to pull her from a car.  *Id.* at 15:18-16:5.

During her own testimony at the evidentiary hearing, Ms. Benton unequivocally stated that she had been the juror who replied "domestic" during Mr. Perkins' *voir dire* questioning.  EHT at 77:25-78:6.  Ms. Benton relayed her recollection of the *voir dire* during questioning by Mr. Sylvester:

> Q.  Do you recall being asked, "Has anyone been the victim of a crime?"
> A.  Yes, I can remember that.
> Q.  Did you answer that question?
> A.  I think during that time I answered -- we answered as a group.  And I did state "domestic."
> \*\*\*
> Q.  And at that time, did anybody ask you any questions about that?
> A.  No sir, not –
> Q.  Did they just continue going on as though you may not have said anything?
> A.  Yes, sir.

EHT at 63: 6-19.

Further on in the hearing, the following exchange took place between Ms. Benton and

Mr. Sylvester:

> Q.      Now, there's been some discussion as to whether or not you've been the
>         victim of a crime.  You did say you had been the victim of a domestic
>         crime, is that correct?
> A.      Yes.
> Q.      And did you try to tell the Defense that at the time?
> A.      I answered the question I -- I answered the question that was asked of me.
>         Details was [*sic*] not asked.

EHT at 64:11-17.

Ms. Benton further stated that, had the defense questioned her further about her previous

instance of a "domestic" crimes, she would have answered "any" questions that might have been

asked of her.  EHT at 69:18-24.  Additionally, Ms. Benton testified that she did not do "anything

to sabotage" the trial; that she answered the questions posed to her truthfully, to the best of her

ability; and that she did not "try to influence the other people on the jury."  *Id.* at 70:24-71:10.

As stated *supra*, petitioner contends, without citing evidentiary support, that Ms. Benton

knew either the kidnaping victim, Kewanita Brownfield, or her mother Evelyn, or both.  Such a

claim is not argued anywhere in either the pre- or post-hearing briefs prepared by petitioner's

counsel.  In any event, Ms. Benton, under oath, denied knowing any of the witnesses who

testified at trial or their family members.  EHT at 64:18-23.[6]

---

[6] During questioning by Mr. Sylvester:

> Q.      Do you recall coming back on that second time and the Defense asked you did you know
>         somebody Brownfield being one of the relatives of the victims?
> A.      Yes, sir.
> Q.      And what was your answer to that?
> A.      No, I do not know any of those people that they named.

EHT at 64:18-23.

## LAW AND ANALYSIS

**I.      Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. §

2254, governs *habeas corpus* relief.  The standard of review is set forth in 28 U.S.C. § 2254(d):

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination
> > of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000).  "The

'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's]

decisions as of the time of the relevant state-court decision."  *Id.* at 740.  Under the

"unreasonable application" clause, a federal habeas court may grant the writ only if the state

court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions

but unreasonably applies the principle to the facts of the prisoner's case."  *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal

*habeas* courts presume such determinations to be correct; however, the petitioner can rebut this

presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

14

A.      **Denial of Motion for a New Trial**

With this claim, petitioner essentially contends that the Louisiana Second Circuit Court of Appeals violated his Sixth Amendment right to a fair trial by affirming the trail court's denial of his motion for a new trial.  The crux of petitioner's argument turns on the discrepancies between the *voir dire* transcript and Ms. Benton's testimony at the hearing on the motion for a new trial, which petitioner argues demonstrates that Ms. Benton could not have served as an impartial juror in a domestic violence case.

The Fifth Circuit has stated that ". . . juror bias can come to light in two ways: 'by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed.'"  *United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988) (citing *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976)); *see also United States v. Wood*, 299 U.S. 123, 133 (1936).  Petitioner argues herein that Ms. Benton harbored actual bias, because she "failed to respond truthfully and completely to a general and unconditional question about whether she had been the victim of any crime."  Doc. # 25, p. 8.

The Sixth Amendment of the United States Constitution guarantees an impartial jury, and the presence of a biased juror may require a new trial as a remedy.  *Hatten v. Quarterman*, 570 F.3d 595, 600 (5th Cir. 2009).  A juror is considered biased if his "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  *Id*. (citing *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852 (1985))).

A juror's bias may be either actual or presumed.  *Hatten*, 570 F.3d at 600.  If a juror fails to answer a material question honestly during *voir dire*, and an honest response would provide a

valid basis for a challenge for cause, the juror has demonstrated actual bias.  *Id.*; *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001) (citing *McDonough Power Equip., Inc. V. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850 (1984)).  Claims of actual bias are normally addressed in a hearing "where the judge examines the juror and obtains assurances of the juror's impartiality." *Brooks v. Dretke*, 444 F.3d 328, 330 (5th Cir. 2006) (citing *Smith v. Phillips*, 455 U.S. 209, 217-18, 102 S.Ct. 940, 946 (1982)).

In order to obtain a new trial:

> A party must first demonstrate that a juror failed to answer honestly a material question during *voir dire*, and then further show that a correct response would have provided a valid basis for challenge for cause.  The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*McDonough Power Equipment*, 464 U.S. 548, 556.

Here, petitioner fails to demonstrate that Ms. Benton did not answer the questions asked of her honestly.  Petitioner has argued that Ms. Benton's bias is reflected by the fact that she did not respond to a general question about whether she had been the victim of a crime.  However, as the evidentiary hearing testimony illustrates, Ms. Benton stated under oath that she was the juror to respond "domestic" in answer to Mr. Perkins' question about whether any potential jurors had been crime victims.  EHT at 63: 6-19.  Ms. Benton further stated, and the *voir dire* transcript reveals, that Mr. Perkins neglected to question Ms. Benton at length regarding what sort of "domestic" crimes she may have been involved in.  *See* R, V. 3 at 674.  Mr. Perkins recalled someone answering "domestic," but could not state with any certainty whether the speaker was Ms. Benton.  Again, the record reflects that Mr. Perkins did not attempt to question the speaker further about what type of "domestic" crimes she had experienced.

16

Petitioner also claims that Ms. Benton's dishonesty is evidenced by the fact that, during

trial, she did not respond affirmatively to Mr. Perkins' question as to whether anyone on the jury

panel "had experienced domestic violence." EHT at 11:8-15.  Petitioner specifically argues that

Ms. Benton

> [A]dmitted that she did not respond to questions about being a domestic violence
> victim because the questions required, in her opinion, a response only if she could
> not be fair, a determination that she made on her own despite the purpose of *voir
> dire* and a determination that, through her silence, prevented an investigation by
> the state trial court judge, [Mr.] Perkins, and ADA Sylvester into [Ms.] Benton's
> ability to serve as an impartial juror.

Doc. # 25 at p. 7 (emphasis in original).

However, a review of the *voir dire* transcript indicates that Mr. Perkins' question differed

from his description of it at the evidentiary hearing:

> Would you pass the microphone over to Mr. Nickelson?  I'm going to ask this
> question, Mr. Nickelson, to the whole jury.  Is there anybody in here that's ever
> been involved in a case of - in a domestic case where there's been some fighting
> between the family members or they have close personal friends where there - had
> the same problem **which would cause you not to be able to be fair in this
> particular case if that information came up?**  Okay.  Now.  Mr. Nickelson,
> where are you working at, sir?

R., V. 3 at 679:8-16 (emphasis added).

Ms. Benton was entitled to remain silent in response to Mr. Perkins' question.  Ms.

Benton believed that she could be fair, and thus did not relay any doubt to Mr. Perkins about her

ability to serve as a juror, despite any past experiences she had with "fighting between the family

members."  Mr. Perkins' question was not "Has anyone ever been a domestic violence victim?"

Rather, the question went to the individual jurors' subjective beliefs about their ability to serve,

notwithstanding any past experiences they might have had with domestic violence.  A subjective

question, such as the one posed by Mr. Perkins, "provide a poor context for applying the

*McDonough* framework."  *Hatten*, 570 F.3d at 602; *United States v. Collins*, 972 F.2d 1385, 1403-04 (5th Cir. 1992).  In sum, petitioner has failed to show that Ms. Benton was dishonest during *voir dire*; thus, any *habeas* relief sought on a claim of jury bias is not warranted.

### B.    Challenges for Cause

With his second claim, petitioner contends that two prospective jurors - Karen Fletcher and Sylvia Baxter - were biased for purposes of the Sixth Amendment, and that the trial court erroneously denied his challenges for cause as to both of them.  As a result, petitioner continues, he was required to use peremptory challenges on both prospective jurors that he could have used on other prospective jurors.  Petitioner, however, has failed to demonstrate that the trial court erred in denying his challenges for cause as to either Fletcher or Baxter.

"The standard for determining whether a proposed juror may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties in accordance with his instructions and oath."  *United States v. Wharton*, 320 F.3d 526, 535 (5th Cir. 2003).  In the *habeas* context, the question of whether a prospective juror may be challenged for cause is a factual issue governed by 28 U.S.C. § 2244(d)(2), under which the finding of the trial judge is presumed correct.  *Allridge v. Cockrell*, 92 Fed.Appx. 60, 66 (5th Cir. 2003).  To rebut this presumption, the petitioner must adduce "clear and convincing evidence that the factual determination by the State court was clearly erroneous."  *Kelly v. Lynaugh*, 862 F.2d 1126, 1134 (5th Cir. 1988).

Both Ms. Fletcher and Ms. Baxter testified during *voir dire* that they had family members who had been the victims of violent crimes.  Ms. Fletcher testified that her niece had been the victim of a kidnaping and attempted murder.  R. at V. 3, 112.  Ms. Baxter testified that her first

18

husband was robbed approximately twenty-five years ago.  *Id.* at 83.  However, both jurors also

testified that they could nevertheless serve as impartial jurors.  The following exchange between

Judge Jones and Ms. Fletcher took place after Ms. Fletcher testified about her niece:

> The Court:  Do you think in that experience in your family life would affect your ability to sit as a juror and to decide this case on the basis of the law and the evidence that comes into this trial?
>
> Ms. Fletcher:  Well, I prayed on it last night that I could be not think of her and think of just the situation in this case.
>
> The Court:  All right.  You didn't pray that you would be able to get on this jury and stick it to him did you?
>
> Ms. Fletcher:  Oh, no, no, no, no.
>
> The Court:  All right.  I'm serious about that to a certain extent because we do have unfortunately a few occasions where people have personal agendas.
>
> Ms. Fletcher:  And see this has been just four years but I mean I didn't even have anything against...I worked with two of the people that were connected to them, a grandson and a cousin and I had no bad feelings toward them at all.  You know, it was strictly to the boys that done this and I, you know, I pray that I can just not even think about that and just listen to this.

*Id.* at 112-13.  When Mr. Perkins subsequently examined Ms. Fletcher, she confirmed that she

could serve as an impartial juror:

> Mr. Perkins:  Your niece was a victim of a very horrible crime.
>
> Ms. Fletcher:  Right.
>
> Mr. Perkins:  And you've said you could be fair.
>
> Ms. Fletcher:  Yes.
>
> Mr. Perkins:  Despite that?
>
> Ms. Fletcher:  Right.
>
> Mr. Perkins:  Have you searched your heart?  I know you said you prayed about that and I appreciate that.  And you think you really could be fair or do you think really when it comes down to it, there might be some question in your mind about your objectivity in this case?
>
> Ms. Fletcher:  No.  Now yesterday I did have doubts.  And after I prayed over it last night, the Lord put a calmness over me and that was telling me that I could be.

*Id.* at 212-13.

19

During her own examination by Mr. Perkins, Ms. Baxter testified that she too could serve as an impartial juror even though her first husband had been the victim of a robbery:

| | |
|---|---|
| Mr. Perkins: | [Y]ou indicate that you can be fair in this particular case? |
| Ms. Baxter: | Right. |
| Mr. Perkins: | Is there any doubt in your mind that you can be fair? |
| Ms. Baxter: | I don't believe I would be unfair.  I would listen.  I sure wouldn't want anybody to judge me until they heard all the evidence. |
| Mr. Perkins: | Right.  That was the next question I was going to ask you.  I was going to ask you if you were sitting in my client's seat would you want somebody like yourself to be a juror? |
| Ms. Baxter: | I believe so. |

*Id.* at 84.

In denying petitioner's challenge for cause as to both Ms. Fletcher and Ms. Baxter, the trial court judge determined that both women could serve as impartial jurors.  As previously noted, this finding is entitled to a presumption of correctness under 28 U.S.C. § 2254(d)(2). Petitioner has not provided the court with any evidence to rebut this presumption.  Furthermore, the record demonstrates that the trial judge was justified in determining that both Ms. Fletcher and Ms. Baxter could serve as impartial jurors and in denying the challenges for cause.  Both women testified that they would be fair, impartial, and not prejudiced against petitioner. Therefore, relief on this claim is unwarranted.

Petitioner has not shown that the Second Circuit Court of Appeals' findings of fact were based on an unreasonable determination of the facts in light of the evidence presented, nor has he shown that the state court's conclusions of law as to juror Phyllis Benton were contrary to, or involved an unreasonable application of, clearly established federal law.

## CONCLUSION

For the reasons stated above, it is recommended that the petition for writ of habeas corpus

20

[doc. # 2] under 28 U.S.C. § 2254 be **DENIED**.  Under the provisions of 28 U.S.C. § 636(b)(1)(c) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

  A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACHING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

  THUS DONE AND SIGNED at Monroe, Louisiana, January 27, 2011.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE